UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 07-CV-218-KSF

PAUL ALLEN STAPLETON PLAINTIFF

VS: **MEMORANDUM OPINION AND ORDER**

VADA WILSON, ET AL. DEFENDANTS

Paul Allen Stapleton, who is confined in the Three Forks Regional Jail ("TFRJ") located in Beattyville, Kentucky, has filed a *pro se* civil rights complaint asserting claims under 42 U.S.C. § 1983 [Record No. 2]. By previously entered Order, the Court has granted the plaintiff's motion to proceed *in forma pauperis* [*See* Order, Record No. 6].

This matter is before the Court for initial screening.[1] 28 U.S.C. § 1915A; *McGore v. Wrigglesworth*, 114 F.3d 601, 607-8 (6th Cir. 1997).

To establish a right to relief under § 1983, a plaintiff must plead and prove two essential elements. He must show, first, that he has been deprived of rights secured by the Constitution or laws of the United States and, second, that the defendants allegedly depriving him of those rights acted under color of state law. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981); *O'Brien v.*

---

[1] As will be discussed *infra*, on July 13, 2007, the Court ordered the jail in which the plaintiff is confined to file an emergency response to address what the plaintiff described as an urgent medical issue [*See* Order, Record No. 8]. The jail filed a response [Record No. 11]. On July 27, 2007, the court entered an Order finding that no further emergency intervention was needed and that the remainder of the plaintiff's claims would be screened in the standard manner [*See* Order, Record No. 14].

*City of Grand Rapids*, 23 F.3d 990 (6th Cir. 1994).

This is a *pro se* complaint and, as such, it is held to less stringent standards than those drafted by attorneys. *See Cruz v. Beto*, 405 U.S. 319 (1972); *Haines v. Kerner*, 404 U.S. 519 (1972). The allegations in a *pro se* complaint must be taken as true and construed in favor of the plaintiff. *See Malone v. Colyer*, 710 F.2d 258, 260 (6th Cir. 1983). However, under 28 U.S.C. § 1915(e)(2) a district court can dismiss a case at any time if the court determines that the action is: (i) frivolous or malicious, or (ii) fails to state a claim upon which relief can be granted.

NAMED DEFENDANTS

Plaintiff named the following defendants: (1) Vada Wilson, Administrator of the TFRJ; (2) Keith Combs, Chief of Security of the TFRJ; (3) "Captain Neely" of the TFRJ; (4) Harold Little , Class "D" Coordinator of the TFRJ: and (5) Joanie Hayes, "Captain" of the TFRJ.

CLAIMS

Plaintiff asserts various challenges to the conditions of his confinement at the TFRJ.[2] First, Plaintiff Stapleton alleges that he, along with other TFRJ inmates, are forced to sleep on the floor "with vermin." Second, he alleges that he and other TFRJ inmates are being starved by jail officials. Third, the plaintiff alleges that the defendants have denied prisoners access to the courts. The plaintiff alleges generally that he filed grievances, although he provided no details as to dates when they were filed, with whom, or the subject matter of the grievances. *See* Record

---

[2] If the plaintiff is a pretrial detainee, his claims would fall under the Fourteenth Amendment of the United States Constitution. If he has been convicted of a felony and is only being temporarily housed in a jail facility, his claims would fall under the Eighth Amendment of the United States Constitution.

No. 2-1, Complaint, § IV (C), p. 6]. Plaintiff alleges that the TFRJ did not answer or respond to his grievances. [*Id*.]. The plaintiff later asserted claims alleging that the defendants were being deliberately indifferent to his various medical conditions [Record Nos. 5 and 12].

PROCEDURAL HISTORY

The plaintiff filed his initial complaint [Record No. 2]. In a subsequent handwritten letter dated July 10, 2007 [Record No. 5] (filed of record on July 12, 2007), the plaintiff alleged that he was facing an immediate medical emergency with regard to a kidney stone condition. Given what appeared to be a claim warranting urgent action, the Court entered an Order requiring the TFRJ to file an emergency answer to address the possible immediate medical emergency as to the plaintiff's kidney stone condition [*See* Order, Record No. 13].

Counsel for Vada Wilson, Administrator of the TFRJ, filed a Response in which she explained the medical treatment being rendered to the plaintiff concerning his kidney stone condition [Record No. 11] . On July 25, 2007, the Court received another handwritten letter from the plaintiff in which he asserted a myriad of additional complaints about the conditions of his confinement at the TFRJ [Record No. 12].

On July 27, 2007, the Court entered an Order in which it directed the Clerk of the Court to send a copy of the July 25, 2007 letter to counsel for Vada Wilson as a one-time accommodation to the *pro se* plaintiff [Record No. 13, p.2, ¶ 2]. The Court specifically and expressly instructed the plaintiff that **from that point forward**, he was required to serve Wilson's counsel with a copy of every document which he sent to the Court [*See Id*., ¶ 3].

On review of Wilson's Response to the claim about the plaintiff's emergency kidney

stone condition, the Court entered a separate Order on July 27, 2007 [Record No. 14]. In that Order, the Court determined that the plaintiff was receiving proper medical treatment and that no further emergency intervention by the Court was needed. The Court stated:

> "In light of this [Wilson's] Response, the Court does not perceive the plaintiff to be in any pending medical jeopardy which would require additional intervention by the Court. The remainder of the plaintiff's claims challenging the conditions of his confinement will be addressed after the plaintiff has complied with the terms of the Order entered on July 13, 2007 [Record No. 7]."

[Order, July 27, 2007, Record No. 14].

In a footnote of that second Order entered on July 27, 2007, the Court *again* reminded the plaintiff of his duty to serve Attorney Melissa Howard, counsel for the TFRJ, with a copy of his pleadings [Record No. 14, p.1, n.1]. Thereafter, Counsel for Vada Wilson filed an Answer to the Complaint [Record No. 15].

The plaintiff continued his pattern of filing *ex parte* letters with the Court. Despite previous, express instructions to the plaintiff - - set forth in two separate Orders entered on July 27, 2007 [Record Nos. 13 and 14], the plaintiff filed three back-to- back *ex parte* letters [Record Nos. 16, 17 and 18]. All lacked any indication that he had served copies on counsel for Vada Wilson. Consequently, on August 15, 2007, the Court entered an Order directing the Clerk of the Court to strike the three letters as being non-compliant [*See* Order, Record No. 19].

Undeterred by the Court striking his first three *ex parte* letters [Record Nos. 16, 17 and 18], the plaintiff then submitted three additional *ex parte* letters to the Court, being Record Nos. 20, 21, and 22. In those three letters, the plaintiff asserts a long list of numerous other complaints about the conditions of his confinement, which the Court will not recite in this Order.

In the letter dated August 15, 2007, which was not filed of record until August 22, 2007, the plaintiff explained his refusal to serve counsel for Vada Wilson with copies of his letters by stating as follows:

> "Today I have learned who was council {sic} for T.F.R.J. There is no law library here, no access to a copy machine, we have nothing! We are in segregation."

[Record No. 20].

The plaintiff echoes a similar comment in his letter dated September 10, 2007, which was not filed of record until September 20, 2007 [Record No. 21].

> "This administration will not copy-get carbon paper for legal use. There is no way to notify counsel for the jail because the mail will not go out on 9-10-07."

[Record No. 21].

Stapleton's assertion -- that "there is no way to notify counsel for the jail" about his new complaints contained in his recent letters-- is simply incorrect. The Court notes that the plaintiff did not encounter any problem mailing no less than six letters *to the Court*. Even if it were true that the plaintiff had no access either to carbon papers or a copy machine, he could have prepared a handwritten copy of his numerous complaints and mailed them to Attorney Melissa Howard, counsel for Vada Wilson, at the same time as he mailed his original letters to the Court. He does not allege that he was deprived of pen and paper.

In sum, it appears that the plaintiff wanted to avoid his obligation to mail his complaints to counsel for Vada Wilson despite being told to do otherwise. The Court will order the Clerk of the Court to **STRIKE** the *ex parte* letters filed as Record Nos. 20, 21, and 22.

## DISCUSSION

### 1. Construed Official Capacity Claims

To the extent that the plaintiff may be asserting his Eighth Amendment claims against the named defendants in their official capacities, these construed claims must be dismissed under the Eleventh Amendment of the United States Constitution. The Eleventh Amendment provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or subjects of any foreign State.

Under the Eleventh Amendment, any suit for damages against state officials sued in their *official* capacities would not be viable, because it would be the same as a suit against the state itself. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989), and *Doe v. Wigginton*, 21 F.3d 733, 737 (6th Cir. 1994) (state officials sued in their official capacities are not considered "persons" under § 1983).

"Official capacity suits...generally represent only another way of pleading an action against an entity of which an officer is an agent...[An] official capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 165-66, 105 S. Ct. 3099 (1985). State officials, in their official capacities, are not considered "persons" under § 1983. *Will v. Michigan Dept. of State Police*, 491 U.S. at 7; *Doe v. Wigginton*, 21 F.3d at 737 (6th Cir. 1994).

The named defendants enjoy absolute immunity from suit in their official capacities, under the Eleventh Amendment. The plaintiff's construed Eighth Amendment official capacity claims against the named defendants are dismissed with prejudice.

2. Individual Capacity Claims

The record reflects that on July 12, 2007, the Court entered a "Deficiency Order" [Record No. 4] in which it advised the plaintiff that he should produce evidence of his stated efforts at administrative exhaustion. It is unclear when or if the plaintiff has fully exhausted all of his claims. The only claims before the Court are the remaining allegations contained in the initial complaint [Record No. 2] and the plaintiff's subsequent July 25, 2007 letter to the undersigned, docketed as Record No. 12.

The Court will not consider the contents of the *ex parte* letters from the plaintiff [Record Nos. 16, 17, 18, 20, 21, and 22] asserting new and additional challenges to the conditions of his confinement. The plaintiff was given a readily comprehensible instruction about serving his papers, and he failed to follow those instructions *See Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991). The consequence of the plaintiff not following the Court's order is that the Court will not consider the six letters stricken from the record.

On review of the remaining claims contained in Record Nos. 2 and 12, the Court determines that they lack any merit or substance. They will be dismissed with prejudice.

A. Sleeping on the Floor:
Analysis Under the Eighth Amendment

The plaintiff argues that his having to sleep on the floor violates his constitutional rights. Of relevance is the plaintiff's statement in the instant complaint that while he was an inmate in the United States Penitentiary in Atlanta, he filed a complaint about "Sleeping on the floor." [Record No. 2-1, p.7, § V (B)]. In response to the question as to the outcome of that

claim/complaint, he responded "Case dropped." [*Id*].

Assuming that this claim is not a "pattern complaint" of Plaintiff Stapleton, the Court will assess the claim under the proper constitutional framework. To determine whether a liberty interest is implicated in a prison setting, the interest must be limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 483-84, 115 S. Ct. 2293, 132 L. Ed.2d 418 (1995). Under the Eighth Amendment, a prisoner-plaintiff challenging the condition of his confinement must allege a sufficiently grave deprivation, such as serious medical needs, and the defendant prison official's deliberate indifference to the condition. *Wilson v. Seiter*, 501 U.S. 294, 298, 111 S. Ct. 2321 (1991).

The Eighth Amendment requires prisoners objecting to conditions of their confinement to satisfy both subjective and objective elements of the claim. *Hudson v. McMillan*, 503 U.S. 1, 8 (1992). The subjective component of the inquiry asks if the official acted with a sufficiently culpable state of mind. *Caldwell v. Moore*, 968 F.2d at 602 (citing *Wilson v. Seiter*, 501 U.S. at 298). The "culpable state of mind" has been defined as "more than mere negligence, but 'something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.'" *Foy v. City of Berea*, 58 F.3d at 232 (quoting *Farmer v. Brennan*, 114 S. Ct.1970,1978 (1994)).

The objective component of an Eighth Amendment claim challenging the conditions of confinement requires that the deprivation is sufficiently grave if the condition falls beneath "the minimal civilized measure of life's necessities," as measured by a "contemporary standard of

decency." *Rhodes v. Chapman*, 452 U.S. at 347. *See also Walker v. Mintzes*, 771 F.2d at 925 (prison condition must amount to a deprivation of "life's necessities" in assessing Eighth Amendment claim). Necessities generally consist of food, medical care, and sanitation or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 347-48; *Neal v. Miller*, 778 F. Supp. 378, 382-83 (W.D.Mich. 1991) (citing *Rhodes*, 452 U.S. at 347-48); *see also Strauss v. Ray*, 221 F.3d 1336,**2 (6th Cir. (Tenn.) June 19, 2003) (Table) (Unpublished Disposition).

Analysis of the objective component may be made through a contextual approach. Conditions that might be deemed cruel and unusual, if they were permanent, may not rise to the level of an Eighth Amendment claim if they are *temporarily* imposed upon a prisoner. *Wilson v. Seiter*, 501 U.S. at 300; *see also Hutto v. Finney*, 437 U.S. 678, 686-87 (1978).

While the plaintiff's complaints suggest uncomfortable or unpleasant circumstances, they do not describe conditions which "impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," *Sandin v. Conner*, 515 U.S. at 483-84, or fall beneath "the minimal civilized measure of life's necessities," as measured by a "contemporary standard of decency." *Rhodes v. Chapman*, 452 U.S. at 347.

"The federal courts may not intervene to remedy conditions that are merely unpleasant or undesirable." *Neal v. Miller*, 778 F. Supp. 378 at 383. *See also Abdur-Reheem-X v. McGinnis*, 198 F.3d 244, 1999 1045069, **3 (6th Cir. (Mich.) November 12, 1999) (Table) (Unpublished Disposition) ("The Eighth Amendment protects Abdur-Reheem-X from conditions of confinement that are health threats; it does not shield him from conditions of confinement that cause mere discomfort"); *Hunt v. Reynolds*, 974 F.2d 734, 735 (6th Cir. 1992).

Although the Eighth Amendment protects against cruel and unusual punishment, this does not mean that federal courts can or should interfere whenever prisoners are inconvenienced or suffer *de minimis* injuries. *Hernandez v. Denton*, 861 F.2d 1421, 1424 (9th Cir. 1988) (allegation that inmate slept without a mattress for one night is insufficient to state an Eighth Amendment claim and no amendment can alter that deficiency), *vacated on other grounds sub nom*. *Denton v. Hernandez*, 112 S. Ct. 1728 (1992); *see e.g.*, *De Mallory v. Cullen*, 855 F.2d 442, 445 (7th Cir. 1988) (correctional officer spitting on prisoner does not rise to level of constitutional violation); *Holloway v. Gunnell*, 685 F.2d 150 (5th Cir. 1985) (no claim stated where prisoner was forced to spend two days in hot, dirty cell with no water); *Miles v. Konvalenka*, 791 F. Supp. 212 (N.D. Ill. 1992) (single instance of finding mouse in food not actionable); *Evans v. Fogg*, 466 F. Supp. 949 (S.D. N.Y. 1979) (no claim stated by prisoner confined for 24 hours in refuse-strewn cell and for two days in flooded cell); *McNatt v. Unit Manager Parker*, 2000 WL 307000, *4 (D. Conn. Jan. 18, 2000) (no Eighth Amendment violation occurred when inmates endured stained, smelly mattresses, unclean cells, no bedding for six days, no cleaning supplies for six days, no toilet paper for one day, no toiletries or clothing for six days, no shower shoes; dirty showers; cold water that did not function properly and smaller food portions); *Perkins v. Kansas Department of Corrections,* 1997 WL 383072 (D. Kan. June 9, 1997) (Only Westlaw citation is currently available) (fact that prisoner had to sleep on mattress that was on the floor and had no table on which to sit or eat did not violate the Eighth Amendment).

Here, the plaintiff's claims about sleeping on the floor are inadequate under an Eighth Amendment evaluation. Of final note, the plaintiff states in his letter filed as Record No. 12 that

"I am however off the floor." The Court construes this as a statement that the plaintiff is no longer sleeping on the floor. To that extent, his claim would be moot.

B. Claims of Others Not Considered

The plaintiff refers to numerous complaints which he claims other inmates at the TFRJ assert (such as medical issues, lack of access to the courts, sleeping on the floor). However, a party may not assert the rights of others. *County Court of Ulster County v. Allen*, 442 U.S. 140, 154-55, 99 S. Ct. 2213, 60 L. Ed.2d 777 (1979).

"When determining whether a party may assert the constitutional rights of others, a court must consider: (1) whether the relationship of the litigant to the third party is such that the litigant is an effective proponent of the rights of the third party; and (2) whether the third party is hindered in its ability to assert its own rights. *Singleton v. Wulff*, 428 U.S. 106, 114-16, 96 S. Ct. 2868, 49 L. Ed.2d 826 (1976); *Planned Parenthood Ass'n of Cincinnati, Inc.*, 822 F.2d [1390] at 1394 (6th Cir. 1987)." *Connection Distributing Co. v. Reno*, 154 F.3d 281, 295 (6th Cir. 1998). There is no reason why other TFRJ inmates cannot assert their own claims. Here, the plaintiff is impermissibly asserting the claims of other TFRJ inmates.

C. "Starvation" Claim

The Court further finds the plaintiff's allegation of "starvation" to be lacking. First, the plaintiff's complaints on the issue of "starvation" are so vague that they lack any validity. When was he starved? For how long was he starved? Was one meal skipped or one or two or a weeks' worth of meals? Were the portions served simply smaller than that desired by the plaintiff?

The plaintiff's vague allegation that he was "starved" is too ambiguous to support a claim

under §1983. *See Scheid v. Fanny Farmer Candy Shops, Inc*. 859 F.2d 434, 437 (6th Cir. 1988). When a plaintiff generally alleges that he has been deprived of rights, privileges secured by the federal Constitution and/or laws and/or amendment thereto, but the plaintiff nowhere identifies the substance of the alleged deprivation, such conclusory statements are insufficient under § 1983. *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994)(citing *Ana Leon T. v. Federal Reserve Bank of Chicago*, 823 F.2d 928, 930 (6th Cir.), *cert. denied*, 484 U.S. 945 (1987)).

Second, Vada Wilson, Administrator of the TFRJ, states in her Response that inmates at the TFRJ are fed three meals a day. She adds that they can purchase additional food from the canteen if they deposit money in their inmate account. [*See* Response, Record No. 15, p.1.]

The plaintiff may not like the fare offered at the TFRJ, but that does not equate into a finding that the inmates are "starved." The law is not favorable to inmates who complain about the quality of the food served to them. "The fact that the food [in prisons] is sometimes served cold, while unpleasant, does not amount to a constitutional deprivation." *Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985) (citing *Hoitt v. Vitek*, 497 F.2d 598, 601 (1st Cir, 1974). *See also Madyun v. Thompson,* 657 F.2d 868, 875-76 (7th Cir. 1981) (allegation that food served to segregated prisoners was cold and not on menu served to general population was insufficient to state an Eighth Amendment claim); *Cunningham v. Jones*, 567 F.2d 653, 659-60 (6th Cir. 1977) (complaints about the quality or preparation of food are far removed from Eighth Amendment concerns). The plaintiff's claim of being "starved" does not rise to the level of a valid Eighth Amendment claim and must be dismissed.

D. Denied Access to the Courts

The plaintiff claims that he is denied access to the courts. In order to establish a claim for denial of access to the courts, an inmate must demonstrate an actual injury to a non-frivolous legal proceeding concerning his conviction or prison conditions. *See Lewis v. Casey*, 518 U.S. 343, 351-55, 119 S.Ct. 2174 (1996).

Here, the Court can ascertain no actual injury because the record reveals that the plaintiff has filed extensive pleadings in this action. He has suffered no restriction on his right and ability to communicate with the Court. The Court even went so far as to intervene and order the TFRJ to explain what if any steps were being taken to address the plaintiff's kidney stone medical claim. Only the plaintiff's refusal to serve opposing counsel with his letters prevents the Court from considering his subsequent claims.

Again, as noted, if another inmate has a claim along these lines, it is incumbent on that inmate to assert his own complaints, not piggy-back onto this action. The plaintiff's claim that **he** has been denied access to the Courts, in violation of the First Amendment, is simply contradicted from the record. That claim will also be dismissed.

CONCLUSION

For the reasons discussed herein, it is hereby **ORDERED** as follows:

(1) The Clerk of the Court is directed to **STRIKE** the plaintiff's *ex parte* letters filed as Record Nos. 20, 21, and 22.

(2) This action [07-CV-218-KSF] be **DISMISSED WITH PREJUDICE**, *sua sponte,* from the docket of the Court, and Judgment shall be entered contemporaneously with

this Memorandum Opinion and Order in favor of the Defendants.

This 23rd day of October, 2007.

**Signed By:**

***Karl S. Forester*** KSF

**United States Senior Judge**